IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICARDO SIMONS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 1:16-cv-764 (LMB) |
| ) | Crim. No. 1:14-cr-122-1 (LMB) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Before the Court is Ricardo Simons's ("Simons" or "movant") Motion to Vacate Conviction under 28 U.S.C. § 2255 ("Motion to Vacate"), in which he argues that his conviction under Count 1 for violating 18 U.S.C. § 924(c) must be vacated in light of recent Supreme Court precedent. For the reasons stated below, Simons's Motion to Vacate will be dismissed.[1]

I.

On January 16, 2014, Virginia law enforcement authorities arrested Simons in connection with his activities as a member of the Nine Trey Gangsters ("NTG"), which is a criminal street gang and a subset of the United Blood Nation gang. [Dkt. No. 12]. Specifically, he was charged in Fairfax County General District Court with malicious wounding in violation of Va. Code § 18.2-51; use of a firearm in the commission of a felony in violation of Va. Code § 18.2-53.1; and criminal street gang participation in violation of Va. Code § 18.2-46.2. Id. ¶ 42. All of these violations were alleged to have occurred on May 3, 2013. Id. ¶ 42. On April 8, 2014, a writ of habeas corpus ad prosequendum was issued by this court, which commanded the state authorities

---

[1] Simons has been represented by counsel throughout this proceeding.

to turn over defendant to the United States Marshals Service to appear before the court on criminal allegations.

On April 21, 2014, Simons was transferred to this court, waived indictment, and pleaded guilty to a two-count criminal information charging him with carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 1); and conspiracy to commit robbery in violation of 18 U.S.C. § 1951 (Count 2). [Dkt. Nos. 3, 4, 7]. The criminal information described the predicate crime of violence for Count 1 as "assaulting J.W. with a dangerous weapon in aid of racketeering" on May 3, 2013, but did not reference a particular state or federal statute. [Dkt. No. 4] at 1. Two days after movant's guilty plea, his state court charges related to the events of May 3, 2013 were nolle prossed. [Dkt. No. 12] ¶ 42.

In the Statement of Facts accompanying the Plea Agreement, Simons admitted to the following facts:

> On May 3, 2013, Ricardo Simons and the line-up's low-stain, an NTG term for the second-in-command, were in Dumfries, Virginia discussing J.W. J.W. was an NTG member that had offended the gang by switching to another set of the United Blood Nation. The low-stain decided something had to be done about J.W. and his lack of allegiance to NTG. The defendant and the low-stain drove in the defendant's car to meet J.W. near the Landmark Mall in Fairfax County, Virginia. The defendant and the higher-ranking NTG member were both armed with firearms and confronted J.W. in a parking garage. The defendant told J.W. to lay down on the ground. The low-stain directed the defendant to 'take care of it.' The defendant fired his gun in the direction of J.W. J.W. was struck in the neck and hospitalized. The defendant fired at J.W. to maintain or increase his position in the gang.

Id. ¶ 2.

On July 11, 2014, Simons was sentenced to a total of 150 months' incarceration, consisting of 30 months' incarceration as to Count 2 and 120 months' incarceration as to Count 1, to run consecutive to the sentence for Count 2, to be followed by five years of supervised

release. [Dkt. No. 18]. Movant did not appeal either his convictions or his sentence. On January 12, 2018, his sentence was reduced to a total of 90 months' imprisonment, consisting of 30 months as to Count 2 and 60 consecutive months as to Count 1.

On June 25, 2016, through counsel, Simons filed the instant Motion to Vacate, arguing that his § 924(c) conviction should be vacated in light of Johnson v. United States, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the "residual clause" of 18 U.S.C. § 924(e)(2)'s definition of "violent felony" is unconstitutionally vague, see id. at 2557-63.[2] Movant argued that although the criminal information did not specify the statute on which his predicate offense for Count 1 was based, the relevant offense was likely malicious wounding under Va. Code. § 18.2-51, because Count 1 referenced the events of May 3, 2013, and Simons was charged in state court with violating Va. Code § 18.2-51 on that same date. Simons further argued that under Johnson, malicious wounding in violation of Va. Code § 18.2-51 no longer qualifies as a "crime of violence" under § 924(c).[3] On August 23, 2016, the government filed a

---

[2] At some point after movant filed his Motion to Vacate, he completed his sentence and was released. [Dkt. No. 47] at 3 n.1. Despite this change in movant's status, the Court retains jurisdiction over his Motion to Vacate because he was incarcerated when it was filed, and he remains on supervised release. See United States v. Bryson, 981 F.2d 720, 726 (4th Cir. 1992) ("Whether an individual is in custody for § 2255 purposes is determined at the time the habeas action is filed."); Scharr v. United States, No. 3:14-cv-315, 2014 WL 2808219, at *1 (W.D.N.C. June 19, 2014) ("[B]eing on supervision is a sufficient restraint on liberty to satisfy the 'in custody' requirement of § 2255(a).").

[3] In some sections of the Motion to Vacate, movant argues that Count 1 was premised on an aiding and abetting theory of liability. Elsewhere, he argues that his predicate offense for Count 1 was a conspiracy offense, not a substantive offense. There is no basis in the record to conclude that either of these theories of liability applies to Count 1, and movant did not renew these arguments in his subsequent filings. In fact, in one of his 2018 briefs, movant admitted that "the reference to 'aiding and abetting' in the [Motion to Vacate] appears to be an error." [Dkt. No. 43] at 19 n.11. In any event, even if movant had been charged under an aiding and abetting theory of liability, this would not alter the Court's analysis. See Gordillo Portocarrero, 2019 WL 181119, at *7-*8 ("[T]he 'attempted use' of force is indistinguishable from 'the use' of force.") ("It is a

motion to dismiss the Motion to Vacate, arguing that the Motion to Vacate was time barred under 28 U.S.C. § 2255(f)(3) and reserving all other defenses and arguments, to which movant filed an opposition.[4] On October 31, 2016, the proceedings were stayed to await further guidance from the Fourth Circuit and the Supreme Court.

On April 17, 2018, the Supreme Court held that the residual clause of 18 U.S.C. § 16's definition of "crime of violence"—which is nearly identical to § 924(c)(3)'s residual clause—is unconstitutionally vague. Sessions v. Dimaya, 138 S. Ct. 1204, 1210 (2018). In the wake of Sessions, the stay was lifted, and the parties filed supplemental briefing. In his 2018 brief, movant changed positions with respect to which offense was the predicate for Count 1. Specifically, movant argued that instead of Va. Code § 18.2.-51, the relevant predicate offense was movant's violation of 18 U.S.C. § 1959(a)(3), which prohibits "assault with a dangerous weapon" or "assault resulting in serious bodily injury," and which movant contends does not constitute a "crime of violence" under § 924(c). The government disagreed, arguing that movant's predicate offense "necessarily was a violation of Virginia Code § 18.2.-51" for the reason described in movant's Motion to Vacate. The government contended that this conclusion was further supported by Count 1's exclusion of any allegation that the predicate offense occurred within the special maritime and territorial jurisdiction of the United States. The government further argued that the issue of which statutory violation was the predicate offense

---

fundamental tenet of our criminal justice system that one who aids and abets the commission of an offense 'is punishable as a principal.'") (internal citations omitted).

[4] Movant argues that by filing this threshold motion to dismiss focusing on timeliness issues, rather than filing a direct response to the Motion to Vacate, the government waived all other arguments regarding the merits of movant's claim. This argument is unpersuasive. The government expressly stated in its motion to dismiss that it was not waiving any arguments, and the Court finds it appropriate to consider the arguments the government has made in its subsequent briefing.

4

for Count 1 is of little practical import, because both violations constitute crimes of violence under § 924(c).

On June 24, 2019, the Supreme Court held that the residual clause of § 924(c)(3)'s definition of "crime of violence" is also unconstitutionally vague. See United States v. Davis, 139 S. Ct. 2319, 2336 (2019). The parties were ordered to supplement their briefing on whether movant would be entitled to § 2255 relief and, if so, what form such relief should take. The parties filed additional briefing, and the Motion to Vacate is ripe for review.[5]

## II.

Section 924(c) forbids the use, carrying, or brandishing of a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). It further defines "crime of violence" as any felony offense that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or (B) "by its nature . . . involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3). Subsection (A) of the definition is known as the "force" clause; subsection (B), the "residual" clause.

After Davis, there is no dispute that the residual clause is unconstitutionally vague and cannot be used to support movant's § 924(c) conviction. What remains is the question of whether the predicate offense underlying Count 1, assault with a dangerous weapon in aid of

---

[5] The government argues that consideration of the Motion to Vacate is barred by a variety of procedural obstacles. For the reasons discussed in Chapman v. United States, 326 F. Supp. 3d 228 (E.D. Va. 2018), Khan v. United States, 330 F. Supp. 3d 1076 (E.D. Va. 2018), Royer v. United States, 324 F. Supp. 3d 719 (E.D. Va. 2018), and Gordillo Portocarrero v. United States, No. 1:10-cr-661, 2019 WL 181119, at *4 (E.D. Va. Jan. 11, 2019), these arguments fail. Accordingly, the Motion to Vacate will be considered on the merits.

racketeering, qualifies as a crime of violence under the force clause and can sustain movant's § 924(c) conviction in Count 1.

Well-established case law sets forth the methodology the Court must employ in answering this question. To determine whether a given offense qualifies as a crime of violence under the force clause, courts "use an inquiry known as the 'categorical' approach," in which they "look to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force"[6] and "consider only the crime as defined, not the particular facts in the case." United States v. Simms, 914 F.3d 229, 233 (4th Cir.), cert. denied, 140 S. Ct. 304 (2019). Although a court employing the categorical approach may not consider the defendant's actual conduct, if "the criminal statute is 'divisible'—that is, if it lists 'multiple, alternative elements, and so effectively creates several different . . . crimes'—the Court may look to 'a limited class of documents, such as indictments and jury instructions, to determine which alternative' served as the predicate offense." Larode v. United States, 356 F. Supp. 3d 561, 570 (E.D. Va. 2019) (quoting Descamps v. United States, 570 U.S. 254, 257 (2013)); see also United States v. Gomez, 690 F.3d 194, 198 (4th Cir. 2012) (instructing that the modified categorical approach should be used "for the sole purpose of determining which part of the statute the defendant violated").

III.

Although the government argues that the predicate offense for Count 1 "necessarily was a violation of Virginia Code § 18.2-51," [Dkt. No. 42] at 17, there is no support for that

---

[6] "The term 'physical force' . . . long has been defined as 'violent force—that is, force capable of causing physical pain or injury to another person." United States v. Dinkins, 928 F.3d 349, 354 (4th Cir. 2019) (emphasis in original) (quoting Johnson v. United States (Johnson I), 559 U.S. 133, 140 (2010)).

proposition in the criminal information, which does not reference that, or any other, state statute.[7]

Accordingly, the Court will instead consider the only predicate offense explicitly listed in Count 1: assault with a dangerous weapon in aid of racketeering, which appears to be in violation of 18 U.S.C. § 1959.[8]

18 U.S.C. § 1959 lists elements in the alternative, defining different offenses based on the predicate crime:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—
>
>> (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;
>> (2) for maiming, by imprisonment for not more than thirty years or a fine under this title, or both;

---

[7] Even if the criminal information could be read to include a violation of Va. Code § 18.2-51 as a predicate offense, that predicate would also qualify as a crime of violence under the force clause, as the Fourth Circuit has repeatedly held in the analogous contexts of the Armed Career Criminal Act ("ACCA") and the career offender sentencing guidelines. United States v. Rumley, 952 F.3d 538, 550 (4th Cir. 2020) (holding, in the ACCA context, that "not only does [Va. Code. § 18.2-51] require the causation of bodily injury, but it also requires that the person causing the injury have acted with the specific intent to cause severe and permanent injury — maiming, disfigurement, permanent disability, or death," and accordingly that "[s]uch a crime categorically involves 'the use of physical force'"); United States v. Mitchell, 774 F. App'x 138, 140 (4th Cir. 2019), cert. denied, 140 S. Ct. 1167 (2020) (holding that unlawful wounding under Va. Code § 18.2-51 is a violent felony under the ACCA's force clause); United States v. Jenkins, 719 F. App'x 241 (4th Cir. 2018) (same); United States v. James, 718 F. App'x 201 (4th Cir. 2018) (holding that Virginia unlawful wounding under Va. Code § 18.2-51 is a crime of violence under the force clause of the career offender sentencing guidelines).

[8] Although the criminal information did not include a citation to 18 U.S.C. § 1959(a)(3), it tracked the explicit language of § 1959(a)(3), which is the sole federal statute of which the Court is aware that criminalizes assault with a dangerous weapon in aid of racketeering.

7

>   (3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both;
>   (4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;
>   (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both; and
>   (6) for attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury, by imprisonment for not more than three years or a fine . . . under this title, or both.

18 U.S.C. § 1959(a). Given the structure of this statute, the Court may consult a limited class of documents, such as the criminal information, to determine which specific provision of § 1959 formed the basis of movant's conviction. See Ellis v. United States, No. 4:08-cr-144, 2020 WL 1844792, at *2 (E.D. Va. Apr. 10, 2020); Cousins v. United States, 198 F. Supp. 3d 621, 625-26 (E.D. Va. 2016). The criminal information, in turn, states that the offense at issue in this case is "assault[] . . . with a dangerous weapon in aid of racketeering."[9] [Dkt. No. 4] at 1. Accordingly, the relevant provision of § 1959 is subsection (a)(3), "assault with a dangerous weapon."

Although § 1959(b) includes definitions of the terms "racketeering activity" and "enterprise," the statute does not define "assault." Therefore, "the Court must look to the elements of the predicate offense as it is generically defined." Davis v. United States, 430 F. Supp. 3d 141, 145 (E.D. Va. 2019). "[C]ourts have uniformly recognized that various federal statutes criminalizing 'assault' incorporate the long-established common law definition of that term." United States v. Passaro, 577 F.3d 207, 217–18 (4th Cir. 2009). The elements of common

---

[9] 18 U.S.C. § 1959(a)(3) also prohibits "assault resulting in serious bodily injury." This Court has previously found that § 1959(a) is divisible not just by subsections but also by clauses. See Gordillo Portocarrero, 2019 WL 181119, at *8. Because the relevant charge described in Count 1 is "assault with a dangerous weapon," the Court's analysis will be limited to that clause.

8

law assault are the "(1) willful attempt to inflict injury upon the person of another . . . or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." Davis, 430 F. Supp. 3d at 145 (citation omitted). Although movant contends that "this definition could include even the slightest offensive touching by way of a battery-type assault," "§ 1959(a)(3) heightens this common law assault definition by additionally requiring the use of a dangerous weapon, that is, an object with the capacity to endanger life or inflict serious bodily harm." Id. (citing United States v. Sturgis, 48 F.3d 784, 787 (4th Cir. 1995) (defining a "dangerous weapon")). "The use of an object to endanger life or inflict serious physical harm plainly involves the use, attempted use, or threatened use of violent, physical force." Jones, 2017 WL 3725632, at *6. Tellingly, in Johnson I, the Supreme Court "quoted approvingly a definition of a violent felony as '[a] crime characterized by extreme physical force, such as . . . assault and battery with a dangerous weapon.'" In re Irby, 858 F.3d 231, 236 (4th Cir. 2017) (quoting Johnson I, 559 U.S. at 140-41). For these reasons, "assault with a dangerous weapon" in aid of racketeering activity satisfies the requirements of § 924(c)'s force clause.[10]

Movant argues, citing only out-of-circuit precedent, that assault with a dangerous weapon is not a crime of violence because it does not require the "use" of a dangerous weapon, but rather simply requires the possession or display of a deadly weapon. This argument fails. As a district court in the Fourth Circuit has persuasively concluded,

---

[10] Many district courts in the Fourth Circuit have held the same. See Ellis, 2020 WL 1844792, at *2; Castillo v. United States, No. 3:08-cr-134, 2020 WL 1490727, at *7–8 (W.D.N.C. Mar. 24, 2020); Cisneros v. United States, No. 3:10-cr-73, 2019 WL 6048044, at *4–5 (W.D.N.C. Nov. 14, 2019); Franklin v. United States, No. 3:06-cr-7, 2018 WL 3094888, at *5 (W.D.N.C. June 22, 2018), appeal dismissed, 753 F. App'x 171 (4th Cir. 2019); Cousins, 198 F.Supp.3d at 625-26.

> It is axiomatic that an assault cannot be an assault <u>with</u> a dangerous weapon unless a dangerous weapon is used to commit the assault. The text of [18 U.S.C. § 1959(a)] states, 'Whoever . . . assaults with a dangerous weapon' has committed the offense. 'Assault with a dangerous weapon' is a legal term of art with a readily understood meaning. <u>Cf.</u> Black's Law Dictionary 122 (8th ed. 2004) (containing a dictionary entry for 'assault with a dangerous weapon'). It would require a tortured and unreasonable reading of the statute to reach the conclusion that the phrase 'with a dangerous weapon' modifies 'whoever' rather than 'assault' such that liability could be predicated on simple possession of a weapon.

United States v. Barbeito, No. 2:09-cr-222, 2010 WL 2243878, at *25 (S.D.W. Va. June 3, 2010) (emphasis in original). Moreover, as the Sixth Circuit has concluded, "[r]egardless of whether the deadly weapon touches the victim's body, we cannot imagine one . . . displaying a deadly weapon in the course of an offensive touching without threatening the use of violent force." United States v. Phillips, 768 F. App'x 474, 479-80 (6th Cir. 2019) (internal quotation marks and citation omitted).

Movant further argues that even if 18 U.S.C. § 1959(a)(3) requires the "use" of a dangerous weapon, that offense does not satisfy the requirements of the force clause because it could be committed indirectly by using a weapon such as a toxic chemical; however "[t]his line of reasoning . . . is foreclosed by the Supreme Court's decision in United States v. Castleman, in which the Court held that 'physical force is simply force exerted by and through' human action and that, therefore, a person need not 'directly' touch his victim to exert 'physical force.'" United States v. Mathis, 932 F.3d 242, 264–65 (4th Cir. 2019) (quoting United States v. Castleman, 572 U.S. 157, 170–71 (2014)). "Accordingly, so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent." Id. The conclusion that assault with a dangerous weapon is a crime of violence is bolstered by recent authority from the Fourth Circuit. In United States v. Bryant, 949 F.3d 168, 181 (4th Cir. 2020), the Fourth Circuit held that the analogous offense of assault with

10

intent to rob, steal, or purloin from a postal employee by placing his or her life in jeopardy by using a dangerous weapon in violation of 18 U.S.C. § 2114(a) is categorically a crime of violence under § 924(c)'s force clause because common law "assault requires at least <u>some</u> use or threatened use of force," and the "use of a dangerous weapon to put the victim's life in jeopardy transforms the force into violent physical force." <u>Id.</u> at 181. The Fourth Circuit has also cited approvingly a variety of other cases that "reached similar conclusions in interpreting other assault statutes." <u>Id.</u> (collecting cases, including <u>United States v. Verwiebe</u>, 874 F.3d 258, 261 (6th Cir. 2017) (holding that 18 U.S.C. § 113(a)(3) "involves violent force because it proscribes common law assault with a dangerous weapon, not simple common law assault")); <u>United States v. Brown</u>, 892 F.3d 385, 403 (D.C. Cir. 2018) (observing that "[a]ssault is an offense against an individual, and adding a dangerous weapon into the mix makes the crime an inherently violent one" because "[u]se of that weapon as part of the crime materially increases the risk that violence will ensue").

Similarly, in <u>Larode v. United States</u>, this Court considered the offense of assault on a federal officer with a dangerous weapon under 18 U.S.C. § 111(b), and observed that "[c]ourts have uniformly held that by combining the requirement of forcible action with the use of a deadly weapon, § 111(b) elevates the lower degree of physical force under § 111(a) into violent force sufficient to establish § 111(b) as a crime of violence." 356 F. Supp. 3d 561, 572 (E.D. Va. 2019) (internal quotation marks and citations omitted).[11] The same conclusion applies in this

---

[11] Although 18 U.S.C. § 111 uses the word "forcibly," while § 1959(a)(3) does not, this difference is not dispositive. As the Court held in <u>Larode</u>, § 111(b) is a force-clause crime even "in the absence of physical contact," because "[a] defendant may be convicted of violating § 111 if he engages in 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death,' which in combination with the use or brandishing of a deadly weapon is more than enough to satisfy § 924(c)(3)(A)'s requirement of the 'threatened use of physical force.'" <u>Id.</u> The same is true with respect to § 1959(a)(3). "Us[ing] a dangerous

11

case. Given this wealth of supportive authority, it is clear that movant's predicate offense of "assault with a dangerous weapon" in aid of racketeering activity constitutes a crime of violence under the force clause. Accordingly, movant's conviction for the offense charged in Count 1 will not be vacated.

IV.

For the foregoing reasons, movant's Motion to Vacate will be dismissed by an Order to be issued alongside this Memorandum Opinion.

Entered this 30th day of June, 2020.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

weapon to commit an assault . . . imposes, at a minimum, the <u>threatened use</u> of physical force against another." <u>United States v. Barnes</u>, No. 1:13-cr-311, slip op. at 9-12 (E.D. Va. May 7, 2020).